THEODORE ROSSY, PLAINTIFF-APPELLANT, v. ETHEL PHILLIPS, DEFENDANT-RESPONDENT.

Argued October 31, 1949—Decided December 5, 1949.

*Mr. Harold R. Sandford* argued the cause for the appellant (*Mr. Edward A. Haffer,* attorney).

*Mr. Herman W. Kurtz* argued the cause for the respondent.

The opinion of the court was delivered by

ACKERSON, J. The plaintiff sued to recover a commission for the sale of real estate. The case was tried before a jury in the Sussex County Court, Law Division, and resulted in a judgment of involuntary dismissal, on the defendant's motion, at the close of the plaintiff's case. From this judgment the plaintiff took an appeal to the Appellate Division of the Superior Court. That appeal has now been brought here on our own certification.

The claim to the commission is based upon an oral agreement alleged to have been made between the parties on September 7, 1946, and confirmed by a notice in writing to the defendant on September 9, 1946, pursuant to the requirement of *R. S.* 25:1–9, the pertinent part of which provides as follows:

"Any broker or real estate agent selling or exchanging real estate pursuant to an oral agreement with the owner of such real estate, who shall actually effect such sale or exchange before such oral agree-

ment shall have been repudiated or terminated by the owner in writing as hereinafter provided, may recover from such owner the amount of commission on such sale or exchange, if the broker or agent shall, within five days after the making of the oral agreement and prior to the actual sale or exchange of such real estate, serve upon the owner a notice in writing, setting forth the terms of the oral agreement and stating the rate or amount of commission to be paid thereunder, and if the owner shall not have repudiated or terminated the oral agreement prior to the actual sale or exchange of the real estate."

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

"The notice provided for in this section shall be served either personally or by forwarding the same to the person to be served, by registered mail, to his last known post-office address."

The evidence produced on the plaintiff's case discloses that the defendant, Ethel Phillips, in the month of July, 1946, orally listed her property, known as "Cragmere," for sale with the plaintiff, Theodore Rossy, a licensed real estate broker, for $25,000 and at the same time gave him a key to the premises. He informed her that there would be a five per cent. brokerage commission on the price involved in the event of his effecting a sale.

Several prospective purchasers were taken by the plaintiff to view the premises and defendant was kept informed of his progress through frequent telephone calls and visits to plaintiff's office. He advised defendant of one offer of $21,000 which she refused because "she wanted to sell for about $25,000." Plaintiff had been active in selling the same property to defendant for $21,000 about three years before.

On Labor Day, 1946, the premises were shown to Doctor Ralph Ginter who made an offer of $24,500. Attempts to contact the defendant and inform her of the latest offer were unsuccessful until September 7, 1946, when she telephoned the plaintiff who then told her of the doctor's offer and advised her to take it. During this conversation plaintiff told the defendant that he was to receive five per cent. commission if she accepted the offer and she replied that she would accept the doctor's offer of $24,500. She was then informed that plaintiff would send her a letter confirming their understanding. Accordingly, on September 9, 1946, plaintiff forwarded to the defendant a registered letter confirming the agreement,

which letter, when presented to her, she refused to accept and it was returned, the envelope bearing a pencil notation, "Refused 9/11/46." Later, when asked by the plaintiff why she had refused to accept his registered letter, since she "knew what was in it," she replied, "I never accept registered mail."

A month later, according to a contract dated October 7, 1946, defendant sold the premises to Doctor Ginter for $24,500—the amount of his September offer. However, the plaintiff was not named as the broker in that contract and he has never received a commission on that sale.

At no time, as permitted by the statute, did the defendant, or anyone on her behalf, repudiate or terminate the alleged oral agreement of September 7, 1946. This she could have done by written notice to the plaintiff at any time prior to the actual sale. Parenthetically, this is the effective protection given by the statute to a land owner against a spurious claim for a commission.

In granting the motion for an involuntary dismissal, without putting the defendant to her proof, the trial court took the position that the original listing of the property in July, 1946, constituted an agreement and employment of the plaintiff by the defendant which continued down to the date alleged in the complaint. In so holding the court regarded the transaction in September of that year merely as a modification of the July agreement by reducing the selling price to a specific sum to fit the definite offer of the prospective purchaser. Therefore, it was considered that the July listing continued to be the primary agreement, and, since timely written notice of the terms thereof was not given as required by the applicable statute, the plaintiff was not entitled to recover. In reference thereto, the trial judge commented— "In my opinion that was the original listing, an agreement and employment of this broker, and he should have filed that letter stating that he had the property for sale, $25,000, commission at 5 per cent within 5 days after that date." (July, 1946.)

In support of the position thus taken we are referred to the asserted admission of the plaintiff, on cross-examination,

that he had an oral agreement with the vendor in July, 1946, for a commission on the sale of the premises at the price of $25,000, and that the "agreement continued in September, 1946." But this is not necessarily inconsistent with the plaintiff's assertion that a definite oral agreement with the defendant was made over the telephone on September 7, 1946, and the confirmatory letter which followed specifically refers to it as having been made on the last mentioned date.

We deem it unnecessary to explore the possibility of a distinction between an "oral agreement" under the statute and an "oral listing" of the property for sale as argued by the appellant. Suffice it to say that the arrangement between the parties in July—whatever its character—which authorized the plaintiff to sell the property for $25,000 on a commission basis of five per cent. had resulted in the showing of the property to the person who later purchased it. The conversation over the telephone on September 7, 1946, which stands uncontradicted, advised the vendor of the offer of $24,500 and the name of the person who made it, as well as plaintiff's demand for a commission of five per cent. if the sale should be consummated. The plaintiff testified that the defendant agreed to these terms, and the sufficiency of the content and service of the confirmatory letter of September 9, 1946, is not challenged. Under such circumstances we see no reason in principle why this later definite understanding may not be regarded as a complete oral agreement within the intendment of the statute.

In this connection we must not lose sight of the fact that the oral agreement or listing in July, 1946, not having been followed by timely service of a written notice of its terms, lost its efficacy as a basis for legal liability. Certainly a real estate agent or broker making an oral agreement which becomes ineffectual because not followed by timely notice, is not precluded thereby from entering into another oral agreement, whether upon the same or other terms, which may become effective by proper notice. To hold otherwise would require an artifical construction of the statute contrary to the purpose of its enactment.

Therefore, as the evidence stood at the close of the plaintiff's case, it was error to have granted the defendant's motion for an involuntary dismissal of the action.

The judgment below is accordingly reversed and the cause remanded for a trial *de novo*.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For affirmance*—None.